# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NORMAN A. COLLINS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-13-346-SPS |

**OPINION AND ORDER**

The claimant Norman A. Collins requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born July 18, 1952, and was fifty-nine years old at the time of the administrative hearing (Tr. 32, 137). He completed the ninth grade, and has worked as a cannery worker and farm worker (Tr. 49, 138). The claimant alleges he has been unable to work since July 1, 2005, due to bipolar disorder, manic depression, mood swings, inability to concentrate, lack of knee in his left leg, twisted bowels, arthritis in his hip, and an inability to stand for very long (Tr. 151).

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on May 6, 2010. His applications were denied. ALJ Osly F. Deramus held an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 7, 2011 (Tr. 13-23). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the additional limitations of only

occasional balancing, stooping, and climbing stairs, but never crouching, crawling, kneeling, or climbing ladders (Tr. 17). He further imposed the psychologically-based limitations that the claimant could perform simple and some complex tasks, relate to others on a superficial work basis, and can adapt to a work situation (Tr. 17). The ALJ then concluded that the claimant was not disabled because he could return to his past relevant work as a cannery worker (Tr. 23).

## Review

The claimant argues that the ALJ erred: (i) by posing an incomplete hypothetical to the vocational expert (VE) and further failing to properly determine he could return to his past relevant work, (ii) by failing to properly evaluate the evidence related to his mental impairments at step four, and (iii) by failing to properly evaluate both his credibility and his sister's credibility when she complete two Third Party Function Reports. The Court finds that the ALJ *did fail* to properly evaluate the opinion of the claimant's therapist and a consultative examiner (as well as third party evidence from the claimant's sister, which supported the opinion), and the decision of the Commissioner must therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of psychoactive substance addiction (reportedly in early remission) and disorders of bone and cartilage of the left knee (Tr. 15). As to mental impairments, the claimant began treatment in April 2010 with Mental Health and Substance Abuse Centers of Southern Oklahoma (MHSSO). A May 5, 2010 Axis I diagnosis included bipolar I disorder, MRE depressed, severe with psychotic features, and generalized anxiety disorder, as well as a current

-4-

global assessment of functioning (GAF) score of 42 (Tr. 293). Noting the claimant's own reports, the provider believed the claimant would benefit from services and had a good prognosis for treatment (Tr. 294). The bipolar diagnosis and GAF score of 42 were noted again on a May 7, 2010 assessment two days later (Tr. 296). Records from MHSSO reflect that the claimant continued to suffer from insomnia (Tr. 327). November 2010 notes reflect the claimant was doing better and not nearly as angry as he had been (Tr. 379). A follow-up assessment on April 29, 2011, indicated that the claimant retained the same diagnoses as before, and had a GAF of 50 (Tr. 397). At that time, he had been treatment compliant for six months (Tr. 397). On October 6, 2011, he was discharged from treatment against the recommendation of the agency because he had been noncompliant and stopped coming over the past six months (Tr. 412). The "Discharge Narrative" states that no progress had been made overall and the claimant could not be reached to close the chart (Tr. 412). The claimant's therapist indicated that treatment had not been successful and that none of the goals were achieved due to noncompliance (Tr. 413).

On August 20, 2010, Dr. Beth Jeffries, Ph.D., conducted a mental status examination of the claimant (Tr. 343). She noted no psychiatric history other than rehab while in prison, and assessed him with polysubstance dependence, in reported remission; mood disorder NOS; and antisocial personality disorder, rule out (Tr. 344-345). She noted the claimant's history of drug use, reported imprisonment seven times, and reported gambling, and stated several times that she believed the claimant was at a high risk for relapse due to his "lifelong usage pattern intermittent for going to prison for drug,

alcohol, or assault charges" (Tr. 345). She did state that if he maintained his sobriety that it would be a "very good prognostic indicator," but that if he returned to drug use that management of his mood would be difficult (Tr. 345). She believed his reported insomnia and frequent frustration were the result of his recent adjustment after being released from prison (Tr. 345). She then opined:

> At this time I think that it is unlikely that Mr. Collins' mood symptoms would significantly interfere with his ability to perform occupationally should he choose to do so; however with his felony record, not having worked in a number of years, and the likelihood that there is an underlying personality disorder I think that Mr. Collins might find it difficult to gain employment and then to maintain his behaviors while he is employed.

(Tr. 346). Despite his ninth grade education, she believed the claimant had a likely average IQ, but repeated that she believed "an underlying characterological disorder is likely accounting for at least some of his behaviors" (Tr. 346). Further, due to his difficulty empathizing, recognizing how his behaviors affected others, demonstrated absence of remorse over past behaviors, imprisonment multiple times, drug and alcohol abuse, numerous estranged family members and friends, and reported multiple altercations, she believed the claimant would find it difficult to perform appropriately within most occupational settings, as well as getting along with co-workers and "most certainly supervisors" (Tr. 346). She further advised that the claimant should be appointed an overseer of his funds, if awarded benefits, due to his history of gambling and substance abuse (Tr. 346).

Three days later, an unidentified physician (illegible signature) signed a Mental Functional Assessment Questionnaire that was apparently completed by someone under

his supervision. It explained the claimant's diagnosis as bipolar disorder, MRE depressed – severe, with psychotic features; and generalized anxiety disorder, and listed the signs and symptoms as: low motivation, sleep disturbance, mood swings, poor concentration, racing thoughts, suicidal ideation (Tr. 349). His functional limitations were described as poor coping skills, low frustration tolerance, short term memory, auditory hallucinations, poor verbal/physical impulse control, and learning disabilities (Tr. 349).

On October 11, 2010, a state reviewing physician found that the claimant had moderate limitation in maintaining social functioning, but only mild limitation in activities of daily living and maintaining concentration, persistence, and pace (Tr. 362). He recited (without analysis) Dr. Jeffries' note that the claimant would have difficulty performing appropriately in most work settings, and incorrectly stated she found the claimant capable of handling his own funds (Tr. 364). The entirety of his analysis stated: "Claimant is capable of semi-skilled work" (Tr. 364). He then completed a mental RFC assessment, finding that the claimant was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public, but could perform simple and some complex tasks, could relate to others on a superficial work basis, and could adapt to a work situation (Tr. 366-368).

The claimant's sister Julia Ann Collins prepared two Third Party Function Reports on behalf of the claimant (Tr. 176-183, 195-202). In the first Report, she indicated that the claimant had bad concentration and memory, that he angered easily, and was unable to focus, that he struggled with insomnia and needed a special bath, and that he used to

cook more but usually only prepared simple meals like sandwiches (Tr. 176-178). She stated that he could not carry anything heavy due to his knee problems including postural limitations, and that due to his concentration and memory problems he struggled to follow instructions, complete tasks, and get along with others (Tr. 179-181). In the second report, she continued to discuss his limitations related to his stiff leg, and that he used to have a lot of friends but had become moody and depressed, and no longer talked to people like he used to (Tr. 195-200). She again noted that his concentration and memory negatively affected his ability to complete tasks and follow instructions (Tr. 200, 202).

In his written opinion, the ALJ mentioned Dr. Jeffries' opinion numerous times, reciting all the positive indicators including intact memory and average IQ, but did not mention her concerns regarding the claimant's ability to perform appropriately in a work setting, nor her concerns regarding interactions with a supervisor (Tr. 20-22). He gave little weight to the unidentified physician's Mental Functional Assessment Questionnaire, and did not discuss the fact that it was very similar to the claimant's treatment assessment from MHSSO (Tr. 22). He noted the claimant's treatment at MHSSO, found that the claimant had improved with treatment, and noted his discharge (Tr. 21). He then gave great weight to the state's psychological consultants who reviewed the record and found without explanation that their opinions were consistent with the record (Tr. 22). As to the Third Party Function Reports, he assigned little weight to her opinion because she was not medically trained, she was not a disinterested third party, and her opinion was inconsistent with unidentified evidence of record (Tr. 22).

Here, the ALJ disregarded much of Dr. Jeffries' opinion expressing concerns related to the claimant's ability to actually function in a work environment. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ performed no such analysis and did not even discuss at step four Ms. Jeffries' concerns related to his ability to function in a work environment (particularly to obtain and maintain a job in light of his combination of impairments) or manage his own funds. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his

position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Furthermore, Social Security regulations provide for the proper consideration of "other source" opinions such as that provided by treatment records from MHSSO herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *1. *See also* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ made no reference whatever to these factors in connection with the evaluations these records and assessments, and it is

therefore unclear whether he considered any of them. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original]. The ALJ instead opted to simply reject those records in favor of an opinion by a state agency physician who neither examined nor treated the claimant, and who also ignored and misstated evidence from Dr. Jeffries related to the claimant's ability to concentrate, function appropriately in a work setting, and work with co-workers and especially supervisors. *See, e. g., Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") *citing Vincent ex rel. Vincent v. Heckler*, 739 F.3d 1393, 1394-1395 (9th Cir. 1984).

Social Security Ruling 06-03p also provides the standards for evaluation of third party evidence such as that provided by the claimant's sister, Ms. Collins. Other source evidence, such as functional reports or testimony from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: (i) the nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. The ALJ mentioned the Third Party Function Reports, but discredited them by stating that she was not a doctor and could not be believed because she was related to the claimant, wholly failing to properly evaluate it in accordance with the factors set out in SSR 06-03p. The ALJ's task in evaluating credibility of lay witness

testimony is precisely to determine whether the witness's opinion is sincere or insincere, and then determine what weight, if any, to ascribe to the opinion or testimony. *See Spicer v. Astrue*, 2010 WL 4176313, at *2 (M.D. Ala. Oct. 18, 2010) (finding that an ALJ's rejection of a lay witness statement because it was not a substitute for an appropriate medical opinion must *not* be based on a rationale that "applies with equal force to every 'lay statement.'"). Notably, while it may be appropriate for the ALJ to reject lay witness testimony that is based on the subjective complaints of a claimant when the ALJ has already determined that the claimant is not credible, *see, e.g., Valentine v. Commissioner Social Security Administration*, 574 F.3d 685, 694 (9th Cir. 2009) ("Mrs. Valentine's testimony of her husband's fatigue was similar to Valentine's own subjective complaints. Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted [Valentine's] allegations.' In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."), he is not entitled to reject *all* lay witness testimony with a blanket statement and without the proper analysis.

Because the ALJ failed to properly consider much of the evidence related to the claimant's impairments, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 17th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**